# IN THE COURT OF APPEALS OF IOWA

No. 20-1133
Filed May 12, 2021

**BAJRA RIZVIC,**
    Petitioner-Appellant,

**vs.**

**TITAN TIRE CORPORATION and ZURICH AMERICAN INSURANCE COMPANY,**
    Respondents-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


Bajro Rizvic appeals the denial of his worker's compensation claim for permanent disability. **AFFIRMED.**



Nicholas L. Shaull of Spaulding & Shaull, P.L.C., Des Moines, for appellant.

Joni L. Ploeger of Dentons Davis Brown PC, Des Moines, for appellees.



Considered by Bower, C.J., and Doyle and Mullins, JJ.

**BOWER, Chief Judge.**

Bajro Rizvic appeals the denial of his worker's compensation disability claim. Rizvic alleges his disability was caused by a work-related electrocution injury. We find substantial evidence supports the commissioner's decision and affirm.

### I. Background Facts & Proceedings

Rizvic started working for Titan Tire (Titan) as a tire builder in 2002. His employment required him to be on his feet all day lifting, pushing, and pulling heavy and bulky objects. The job required an employee have a full range of motion. Rizvic worked approximately sixty hours a week.

While working on August 24, 2016, Rizvic's right hand came into contact with exposed electrical wires, and he was electrocuted, resulting in discoloration on his right hand and left foot. He was hospitalized for two days. When released, Rizvic had full range of motion and "normal EKG and cardiac markers" but was not cleared to return to work.

At an evaluation on August 30, Rizvic complained of weakness, pain in his elbows and chest, numbness in his legs, headaches, and an inability to turn his head to the left. The doctor stated she "[could] not find anything seriously wrong with [Rizvic]" but prescribed medication and physical therapy for stiffness and pain in his neck and back. Rizvic did not take or fill the medications as prescribed.

In September, Rizvic's occupational health doctor noted "near normal" back and neck range of motion and released Rizvic to return to work with lifting restrictions. Rizvic was assigned to part-time desk work. Rizvic's physical therapist noted Rizvic had better cervical range of motion during "distraction based

testing." His primary symptoms at physical therapy were cervical spine pain, headaches, and weakness, and his range of motion appeared to decrease over time and therapy. The therapist noted Rizvic's "symptoms are inconsistent day to day with treatment provided," and he demonstrated "suspicious weakness."

In October, Rizvic was referred to Dr. Kurt Smith, who diagnosed neuralgia and myalgia. Rizvic continued to report headaches, neck pain, and upper-back pain. Over several months of treatment, Dr. Smith ordered additional physical therapy, cervical injections, and medication for pain management. Rizvic claimed none of the treatments worked. In December, an MRI showed disc herniation of his C5-C6 vertebrae, more advanced on the left side.

In early January 2017, Rizvic's primary care physician diagnosed him with hypertension and diabetes. In February, Rizvic changed his primary care physician to Dr. Majed Barazanji. Based on Rizvic's reported history and a clinical examination, Dr. Barazanji opined Rizvic's electrocution "represented a substantial causal, contributing, or aggravating factor" in Rizvic's hypertension and diabetes symptoms.[1]

Titan trained Rizvic for forklift driving in early February but disqualified him from the position because of his stated limited neck mobility. Rizvic was placed in a training position instead. On February 14, Rizvic left work for a doctor's appointment and did not return.

---

[1] During a deposition, the doctor clarified that "major stress might trigger diabetes in people who are predisposed to diabetes." He agreed some other source of stress could have caused diabetes or Rizvic may have had it for some time before his diagnosis.

On February 16, Rizvic filed a petition for arbitration seeking workers' compensation benefits. On March 2, Titan sent Rizvic an offer of work. Titan again contacted Rizvic on March 9 about returning to work. Rizvic did not respond.

On March 1, Dr. Trevor Schmitz performed a full orthopedic evaluation and reviewed Rizvic's diagnostic tests. Dr. Schmitz noted "several findings . . . consistent with a nonanatomic source for his pain." Dr. Schmitz concluded the diagnostic tests did not show a cause for Rizvic's left side pain and noted "some evidence of symptom magnification."

On March 21, Dr. Smith placed Rizvic at maximum medical improvement (MMI) with a lifting restriction, recommended no repetitive head turns, and ordered a functional capacity evaluation (FCE). On April 12, Dr. Smith reviewed the FCE and determined Rizvic could physically perform more than the FCE indicated and confirmed Rizvic had reached MMI. On June 21, Dr. Smith authored a letter opining "there are numerous inconsistencies with strength testing as well as range of motion with objective findings not supportive of patient's described subjective symptoms." Dr. Smith opined Rizvic had "a 0% impairment rating as it relates to the injury date of August 24, 2016," but did not change the restrictions recommended in March.

Dr. Barazanji ordered another orthopedic evaluation for Rizvic. The examining physician's assistant found Rizvic's symptoms did not match radiographic findings and the C5-C6 degeneration "well predates his work related injury."

Rizvic was evaluated by neurologist Dr. Steven Adelman on June 26. Dr. Adelman diagnosed sensory loss, cervical dystonia, and muscle tension headaches. Dr. Adelman noted some suspected symptom embellishment.

On January 11, 2018, neurologist Dr. Irving Wolfe evaluated Rizvic. Dr. Wolfe opined "chronic persistent symptoms . . . in individuals who ha[ve] suffered a low-voltage (less than 1,000-volt current) injury are credible." Dr. Wolfe further stated "30%-49% impairment of the whole person . . . in my opinion is a reasonable extrapolation . . . due to pain disorders." After reviewing medical records and interviewing Rizvic, Dr. Wolfe opined "the work that Mr. Rizvic performed at Titan Tire is a substantially causal, contributing, or aggravating factor in the impairments mentioned above." He placed Rizvic at MMI on August 22, 2017, concurred with the physical restrictions noted after the FCE, and recommended continued medication and mental-health treatment.

On March 29, Rizvic was evaluated by orthopedist Dr. William Boulden. Dr. Boulden stated, "[T]he MRI findings, in my opinion, were all pre-existing and none of the pathology . . . was caused by the injury. As I stated before, he has significant nonpathological symptoms noted not only by myself, but several other physicians." Dr. Boulden concurred with Dr. Smith's MMI date of April 12, 2017, and would not place permanent work restrictions due to the "nonpathological signs and symptoms that do not correlate with examinations and diagnostic studies."

After the arbitration hearing, a deputy commissioner determined Rizvic developed "a pain syndrome related to his electrocution at work." The deputy adopted Dr. Wolfe's functional impairment rating, found Rizvic's testimony "generally credible," and determined Rizvic's impairment prevented him from

performing work. The deputy commissioner awarded Rizvic permanent total disability benefits, alternate medical care, and medical-expense reimbursement. The employer filed an intra-agency appeal.

On de novo review, the commissioner reversed the deputy's decision in its entirety. The commissioner found Rizvic was not a credible witness. Relying on Dr. Smith's opinion, the commissioner determined Rizvic did not sustain any permanent disability from his injury and was not entitled to associated expenses and medical care. On judicial review, the district court affirmed the commissioner's ruling.

Rizvic appeals.

## II. Scope and Standard of Review

"Judicial review of workers' compensation cases is governed by Iowa Code chapter 17A [(2020)]." *Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015) (citation omitted).

> A district court decision rendered in an appellate capacity is examined for correction of errors at law. In making such a determination, we apply the standards of Iowa Code section 17A.19[(10)], which provides an agency decision may be reversed where substantial rights of a party have been prejudiced and the action is unsupported by substantial evidence or affected by errors of law, to determine if our conclusion would be the same as that of the district court.

*Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 257 (Iowa 1996) (citation omitted); *see also Puntenney v. Iowa Utils. Bd.*, 928 N.W.2d 829, 836 (Iowa 2019).

"Just because the interpretation of the evidence is open to a fair difference of opinion does not mean the commissioner's decision is not supported by substantial evidence. An appellate court should not consider evidence

insubstantial merely because the court may draw different conclusions from the record." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007) (citation omitted). "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). "It is the commissioner's duty as the trier of fact to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue. The reviewing court only determines whether substantial evidence supports a finding '*according to those witnesses whom the [commissioner] believed.*'" *Arndt*, 728 N.W.2d at 394–95 (alteration in original) (citations omitted).

### III. Analysis

On appeal, Rizvic claims he meets the definition of permanently disabled as a matter of law (without specifying total or partial disability), the commissioner and district court did not interpret the term "disability" correctly, the commissioner did not apply the factors of industrial disability correctly in his analysis, the commissioner erred in finding no causal relation and disregarding the FCE, and the commissioner erred in denying alternate medical care.

We first address the causal-connection issue because causation is a necessary predicate for compensability. "A claimant must prove by a preponderance of the evidence that the injury is a proximate cause of the claimed disability." *Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 560 (Iowa 2010) (citation omitted). If we agree Rizvic has failed to establish causation, we need not address the remaining issues.

"Ordinarily, expert testimony is necessary to establish the causal connection between the injury and the disability for which benefits are claimed." *Id.* As fact-finder, the commissioner determines the weight given to each expert's testimony. *Id.*

In his de novo review of the administrative record, the commissioner carefully reviewed all the records provided in the case, mentioning in particular the "numerous notations" of symptom magnification or embellishment and inconsistencies in Rizvic's claimed pain and weakness compared to objective tests. The commissioner discounted the opinion of Dr. Wolfe and the FCE relied on by the deputy commissioner, explaining they were outliers "when compared against the bulk of the evidence in the record." The commissioner then adopted "the opinion of Dr. Smith that the objective findings do not support [Rizvic]'s subjective symptoms and, as a result, I find [Rizvic] sustained no permanent impairment as a result of his work-related electrocution." The commissioner found Rizvic "failed to carry his burden of proof to establish he sustained any permanent disability as a result of the work injury" and reversed the deputy's finding of permanent total disability as a result of the work injury.

On judicial review, the district court noted Dr. Wolfe was the only medical professional finding causation between Rizvic's reported pain and the work-related injury.[2] The commissioner gave little weight to Dr. Wolfe's medical opinion, and the court also found "insufficient evidence to support Mr. Rizvic's allegation of a pain disorder causally related to his work injury." Instead, the court noted

---

[2] Dr. Barazanji attributed Rizvic's diabetes and hypertension to the electrocution, but no other doctor did so, and Rizvic does not claim this on appeal.

"Dr. Wolfe was the only doctor to causally relate a pain syndrome to Mr. Rizvic's work injury" and observed that none of Rizvic's medical providers diagnosed him with a pain syndrome.

The district court exhaustively examined and described all the medical reports within the record. The district court detailed the multiple medical findings from professionals that Rizvic's reported symptoms did not match his objective physical condition or the initial work-related injury. The court paid particular attention to opinions of the physicians seeing Rizvic multiple times rather than a one-time examination. The vast majority of reports—including multiple treating physicians—found no causal connection between electrocution and Rizvic's reported symptoms. The court concluded substantial evidence supported the commissioner's conclusion Rizvic's medical issues were not work-related.

Upon our review, we agree and find substantial evidence supports the commissioner's finding. Because Rizvic failed to prove his medical issues were work-related, his claims are not compensable.

We affirm the commissioner's and district court's rulings.

**AFFIRMED.**